SMITH, Justice
(concurring specially).
I fully concur in the main opinion. I respectfully disagree, however, with the dissent of Justice Parker and the dissenting portions of the special writings of Justice See and Justice Lyons insofar as they maintain that the trial court’s finding of unfitness is not supported by clear and convincing evidence. I further respectfully disagree with Justice Parker’s dissent, which also takes issue with the holding of the main opinion that the father voluntarily relinquished custody of the child. I join Justice Stuart’s special concurrence and Justice Bolin’s special concurrence.
Justice Lyons’s dissent concludes that the trial court erred in finding the father unfit, because, the dissent concludes, there is no clear and convincing evidence of misconduct or neglect by the father that would render him an unfit parent. Justice Lyons’s dissent also suggests that the trial court’s finding of unfitness was “gratuitous” in that the claim of “unfitness” was not specifically pleaded.
The main opinion recites the findings of the trial court. Justice Lyons’s dissent contends that the main opinion “emphasizes the totality of various circumstances that pointed to the father’s unfitness without giving appropriate emphasis to more recent developments.” 924 So.2d at 672. I fully concur with the main opinion because the record in its entirety, with particular emphasis on current facts, warrants a finding that the father, because of his misconduct and neglect, is currently an unfit and improper person to be entrusted with the care and upbringing of the child. The stark facts in this case reveal that by failing to assume legal responsibility for his child, especially when the mother abdicated hers, the father failed to give his young son the parental nurturing a child needs and is entitled to receive from his parents.
Justice Lyons’s dissent states that “[a]t most, the evidence suggests that the father is not fully ready to undertake the sole responsibility of parenting.” 924 So.2d at 672. His dissent acknowledges that while the father did petition for full custody, he “nevertheless freely and candidly admitted at trial that the child is very happy with the maternal grandparents and that an abrupt change in custody might be traumatic for the child.” 924 So.2d at 672. Justice Lyons’s dissent asserts that the father should not be faulted for suggesting to the court that a change of custody from the maternal grandparents to him be gradual in nature because a gradual change would be in the child’s best interest.
Of course, the father must suggest that any transition of the child into his home should be gradual. His current circumstances explain why he is still not able to assume sole responsibility for his son. He is 30 years of age, and he still has no residence of his own. He currently resides with his mother, although he has a history of moving in and out of her house and has had a “rocky” relationship with her. He “plans” to move out of his mother’s house, but he has taken no specific steps to do so. At trial, he testified that he had recently prepared a budget of his living expenses, but he admitted that his budget included no allocation for the child’s expenses except what is included in his health plan. Notably, until the trial of this ease, the father had never spent 24 hours alone with the child. The father argues that the maternal grandparents limited his contact with his son; thus, he now seeks sole custody. Yet the father admitted at trial that in recent months he contacted the maternal grandparents to advise them that he had a date and, therefore, that he would not pick up his son on Friday as scheduled but would begin his visitation on Saturday instead. His date *664 was with a woman he had just met and whose last name he could not recall at the custody hearing.
Given his behavior and lifestyle choices, it is understandable that the father is willing to allow his child, who is now four years old, to continue residing with the maternal grandparents. He just does not want this Court to hold that he voluntarily relinquished custody or that he is unfit.
As is too often the case, some parents are quite comfortable letting someone else raise their child. It is only when the person or persons actually responsible for the child’s life do what persons in those circumstances typically do- — -make the day-to-day decisions necessary to rearing a child — that these parents assert their parental rights. These parents want control over important decisions, but they want none of the attendant daily parental responsibilities.
Justice Parker speaks of the untenable legal Catch-22 in which the father finds himself. The undisputed facts of this case — as admitted by the father himself— are what they are. The father seeks sole legal custody, yet his actual behavior demonstrates that he has priorities other than the child. The father’s legal situation, however, is of his own making.
I find it regrettable that Justice Parker tacitly implies that the main opinion and the special writings are misguided in succumbing to a “statist view.” 924 So.2d at 678. Justice Parker’s entire conclusion on the relevant legal issue in this case is premised on his conclusion that the trial court impermissibly shifted the burden of proof. I respectfully disagree with that conclusion. As the main opinion notes, the trial court’s entire order demonstrates that no burden shifting occurred, and I believe that the trial court’s findings are sound, given the facts of this case and the standard of review. Despite Justice Parker’s extensive writing on issues of family government, parental rights, and state intrusion on those rights, the facts in this case simply do not support his conclusion that the trial court or this Court subverted the standard of settled caselaw.
As the main opinion correctly notes, the ore tenus rule applies in this case. When evidence in a custody case has been presented ore tenus, the trial court’s findings of fact based on that evidence are presumed to be correct. Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996). This presumption arises because the trial court is able to observe the demeanor of the witnesses and to evaluate their credibility. Moreover, “the trial court is in the better position to consider all of the evidence, as well as the many inferences that may be drawn from that evidence.” 676 So.2d at 1326. Thus, the trial court is in the best position to make a custody determination. 676 So.2d at 1324. Neither this Court nor the Court of Civil Appeals may reweigh the evidence or sit in judgment of disputed evidence presented ore tenus to the trial court in a custody hearing. 676 So.2d at 1324-26.
In Ex parte Terry, 494 So.2d 628 (Ala.1986), this Court noted that in a custody dispute between a parent and a nonparent, the parent has a prima facie right to custody:
“ ‘The prima facie right of a natural parent to the custody of his or her child, as against the right of custody in a nonparent, is grounded in the common law concept that the primary parental right of custody is in the best interest and welfare of the child as a matter of law. So strong is this presumption, absent a showing of voluntary forfeiture of that right, that it can be overcome only by a finding, supported by competent evidence, that the parent seeking custody is guilty of such misconduct or ne- *665 gleet to a degree which renders that parent an unfit and improper person to be entrusted with the care and upbringing of the child in question.’ ”
494 So.2d at 632 (citation omitted; quoting Ex parte Mathews, 428 So.2d 58, 59 (Ala.1983)). Under the law expressed in Ex parte Terry and its progeny, the trial court must determine, in a custody dispute between a parent and a nonparent, whether the parent (1) has voluntarily forfeited custody, and/or (2) is unfit. I do not believe that the trial court errs if it determines, without the issue having been specifically pleaded, that a parent has both voluntarily forfeited custody and is unfit. In fact, we have held that in proceedings involving custody of children this Court “will not be governed by legal niceties in pleading.” Evans v. Evans, 264 Ala. 2, 6, 84 So.2d 337, 340 (1955). Given the gravity of a decision to award custody of a child to a nonparent over a parent, the trial court acts with an abundance of caution when it examines both factors instead of only one.
It might be tempting to avoid addressing the issue of fitness here because the father conceded in his testimony that the child is presently better off residing with the maternal grandparents. If the trial court made only a finding of voluntary relinquishment, the child could still be left to reside with the maternal grandparents. Voluntary relinquishment and unfitness, however, are not mutually exclusive findings; I find nothing in Ex parte Terry that would suggest that evidence of a parent’s voluntarily abandoning or relinquishing custody of his child cannot be considered in also determining whether the parent is unfit. Indeed, evidence that a parent lacks interest in or fails to care for his or her child would be extremely relevant in determining the parent’s fitness.
A parent who is physically present but who fails adequately to supervise, feed, clothe, or otherwise support a child is said to have neglected his or her child. So too, a parent who by lifestyle choices continues to be unavailable to assume parenting responsibilities evidences not only voluntary relinquishment but also neglect by failing to be physically and emotionally present to meet the daily demands of parenting. I believe it is appropriate that this Court address the issue of fitness in this case because the issue of the propriety of the trial court’s finding of unfitness is properly raised on appeal.
A reversal of the trial court’s determination that the father is unfit would become the “law of the case.” The law-of-the-case doctrine holds that “whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.” Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.1987). In Ex parte S.T.S., 806 So.2d 336, 341-42 (Ala.2001), this Court applied the law-of-the-case doctrine to a custody determination and held that the Court of Civil Appeals’ previous determination of the facts in that case precluded the trial court from revisiting those facts on remand.
The father in this case is either “fit” or “unfit” to be entrusted with the care and upbringing of the child. An unwarranted reversal of the trial court’s determination that the father was unfit would foreclose the trial court from subsequently considering whether the father was unfit — at least insofar as it relates to acts that occurred before the reversal and remand — -in a later custody proceeding. Thus, the evidence of the father’s past actions, including his failure to assume daily parental responsibilities; his inability to manage his own life or to hold steady employment; and the fact *666 that until the trial of this case he had never spent 24 hours alone with his own son, would arguably be barred. Such evidence, unless remote in time, is extremely relevant in a custody determination.
Justice Lyons’s dissent states that the trial court’s award to the father of specific and liberal unsupervised visitation is an “anomalous result” if the father is truly unfit. I find no inconsistency, however, in the trial court’s finding the father to be unfit and yet awarding him liberal visitation. As the main opinion notes, the issue is whether the father is fit to provide for the care, custody, and control of the child, i.e., to take ultimate responsibility for the necessary day-to-day decisions for the child’s best interest, not whether he is fit to exercise scheduled visitation. As the main opinion also notes, a finding of unfitness is not tantamount to a termination of parental rights. Said another way, a finding of unfitness is not the equivalent of a finding of permanent parental incompetence.
There is clear and convincing evidence of neglect on the part of the father, which renders him an unfit parent. His voluntary relinquishment of his son’s custody is, as already noted in the main opinion, only one of many facts, past and present, that contributed to the trial court’s finding of unfitness.
NABERS, C.J., and STUART and BOLIN, JJ., concur.